ARTHUR H. JOHNSON ET AL., APPELLANTS, V. PLATTE COUNTY ET AL, APPELLEES.

FILED JULY 10, 1928. No. 26075.

McElfresh & Walker, for appellants.

Reeder & Reeder, George W. Wertz, Emil F. Luckey and B. F. Farrell, contra.

Heard before GOSS, C. J., ROSE, THOMPSON and HOWELL, JJ., and BEGLEY and REDICK, District Judges.

HOWELL, J.

This is an appeal from a decree of the district court for Platte county, denying plaintiffs, appellants, an injunc-

tion asked against Platte county and its supervisors and the commissioners of Colfax county, against levying assessments on plaintiffs' lands to cover cost and expenses of constructing a proposed drainage ditch, and from taking other proceedings looking to paying out and letting contracts for such ditch to extend into both counties.

As we see the case, the chief cause of complaint is the failure of the supervisors to "sit with open doors," as provided in section 972, Comp. St. 1922, which reads: "The board of supervisors shall sit with open doors, and all persons may attend their meetings."

A number of petitions were filed for a ditch. We will deal only with the petition called "last petition," finally acted on, filed March 10, 1926.

A view was made of the route proposed, after which the boards met in joint session. Certain objections were filed by the appellants. The boards, over objections, voted to go into executive session, which was done, to consider the routes of ditches. Appellants and others who were interested were excluded from the room for half an hour, after which time the boards allowed appellants and the public to reenter the room. The boards at once adopted a resolution in favor of the so-called "long route" based upon the first and last petitions, although appellants sought, without avail, to offer further evidence before the resolution was adopted. The motion to go into executive session, as shown by the record, was "for the purpose of discussing the proposed drainage ditch routes now on file."

Engineers were then employed, who filed reports assessing the lands and otherwise going forward with the scheme. This suit was commenced and all activities ceased. The words of the motion follow: "Motion, Supervisor Schaecher, seconded by Supervisor Bender, that we now go into executive session for the purpose of discussing the proposed drainage ditch routes now on file. Motion carried."

It is quite clear that, at that time, the boards had not reached a conclusion. Whatever transpired in the "executive session" fitted them, in their own minds, to make the

final decision necessary to override the protests of appellants. It matters little what transpired in that secret session. They, and they only, could know. Had the doors been open, all those present would have known. The public and all others were excluded for the declared purpose. It was deliberate and not incidental.

The legislature intended to put an end to just such actions by striking at secret conclaves.

Counsel for appellees concede "such meetings must be open to the public." They state the "sole purpose was to afford the members an opportunity for relaxation into a round table discussion of the several proposed routes." The motion states otherwise. The language of counsel and of the motion are admissions that the "open doors" provision of the statute was violated in both letter and spirit. Appellees' brief says: "After the doors were opened, * * * the public filed in." It appears, just before the doors were closed on the meeting, the public filed out by order of the boards, over the protest of appellants. The meeting was on in full sweep. The boards did not retire; they sat where they were and excluded every other person. There they sat, behind closed doors, and functioned; there they sat, with open doors, and functioned. They held the forum as a body, while the public filed out, wondering, no doubt, what was going on.

Such proceedings cannot be said to measure up to the wholesome and uninjurious requirements of the statute. It is not deemed necessary to follow the other contentions of the parties. What has been said necessarily leads to a reversal of the decree of the trial court, with instructions to enter a decree permanently enjoining defendants, as prayed by plaintiffs.

REVERSED.